Ana Méndez Vaz, tercerista y apelante, *v.* Juan de Choudens, demandado-apelado, y Antonio C. Ducret, demandado.

No. 3727.—*Visto:* Diciembre 22, 1925. *Resuelto:* Junio 9, 1926

1. Traspasos Fraudulentos—Remedios de Acreedores y Compradores—Evidencia—De las Presunciones—En General—Compraventa por Documento Notarial.—Un documento notarial no se presume otorgado en fraude de acreedores a menos que y hasta tanto se demuestre, o que envuelve un traspaso de propiedad sin consideración alguna, o una venta después de sentencia contra el vendedor o posterior al libramiento de un embargo contra su propiedad.

2  Traspasos Fraudulentos—Remedios de Acreedores y Compradores—Eviden-
   cia—Su Suficiencia en General.—Una mera sospecha, por fuerte o bien
   fundada que sea, de que una o ambas de las condiciones previas para poder
   invocar el artículo 1264 del Código Civil puede existir, no es suficiente para
   sostener que un traspaso o venta se ha otorgado en fraude de acreedores.
3. Embargo—Práctica de Embargo *(Levy)*, Gravamen *(Lien)* y Custodia y Dis-
   posición de la Propiedad—Oposición o Protesta al Embargo—Propiedad
   de Uno Embargando Como Perteneciente a Otro.—El dueño de propiedad
   embargada como perteneciente a otra persona no tiene obligación o deber de
   oponerse al embargo o a hacer una protesta violenta contra la actuación del
   funcionario que efectúa el embargo.
4. Testigos—Credibilidad, Impugnación, Contradicción y Corroboración—En
   General—De la Credibilidad de los Testigos en General.—Un abogado
   y notario de buena reputación no es una excepción a la regla general con-
   tenida en el artículo 21 de la Ley en Evidencia.
5. Embargo—Mandamiento de Embargo—Prioridad del Mismo—Venta Otor-
   gada el Mismo Día en que se Expidió el Mandamiento.—El hecho de que
   un documento notarial se haya otorgado y el mandamiento de embargo li-
   brado el mismo día, no levanta presunción alguna de prioridad a favor del
   mandamiento.

Sentencia de *M. Rodríguez Serra*, J. (Segundo Distrito, San Juan),
declarando sin lugar la demanda de tercería con costas. *Revo-
cada.*

*R. Sancho Bonet*, abogado de la tercerista apelante; *José N. Qui-
ñones*, abogado del opositor apelado.

El Juez Asociado Señor Hutchison, emitió la opinión del
tribunal.

La apelación establecida en este caso por Ana Méndez
Vaz es contra una sentencia que declara sin lugar su re-
clamación y que el Juez de la corte inferior basó en la si-
guiente opinión:

"En este caso se celebró en el día de ayer la vista del recurso
sobre tercería de bienes muebles interpuesto por Ana Méndez Vaz.
La tercerista alega ser dueña de los bienes embargados como de la
propiedad de Antonio C. Ducret a instancia del demandante en el
caso principal, Juan de Choudens. Alega que esos bienes los ha-
bía adquirido desde el 24 de marzo de 1924 del Sr. Ducret, quien
otorgó escritura pública el 31 del propio mes ante el notario Sr.
Vizcarrondo Coronado, en la que se hizo constar que se retrotraería
a la fecha antes indicada, o sea el 24 de marzo, por el precio de
$1,800.00 que adeudaba Ducret a la tercerista.

"Oponiéndose a las pretensiones de la tercerista, comparece el
demandado Juan de Choudens, y en síntesis, alega que los bienes

embargados son de la propiedad de Ducret, que el contrato de traspaso por Ducret a la tercerista, según aparece en la escritura del 31 de marzo de 1924, es simulado y hecho para defraudar al acreedor·que es el demandante.

"Practicada la prueba y considerada en conjunto, resulta que el día 31 de marzo de 1924, Juan De Choudens radicó ante esta Corte su demanda contra Antonio C. Ducret reclamando la suma de $1,440.55 e intereses; el mismo día, a su instancia, la Corte ordenó el embargo de bienes del demandado, previa prestación de fianza por el demandante por la suma de $1,000.00 El mismo día, 31 de marzo, el Secretario expidió el mandamiento dirigido al Márshal de la Corte para proceder al embargo y al siguiente día, primero de abril, le dió el Marshal cumplimiento, embargando como de la propiedad del demandado, los bienes relacionados en la lista preparada por el propio Márshal. La reclamación de tercería fué presentada el 9 de abril siguiente.

"La tercerista declaró en el juicio como testigo, que la compra de los bienes embargados la hizo con dinero de su exclusiva propiedad; que era dueña de cierto mueble que había arrendado a Ducret, a razón de $100 mensuales, que Ducret no pagó el arrendamiento en 18 meses y que en pago de los cánones atrasados del arrendamiento montantes a $1,800.00, Ducret convino en hacerle traspaso de la maquinaria y enseres, objeto del embargo, según consta en la escritura otorgada con el número 8 en San Juan, P. R., el 31 de marzo, ante el notario Vizcarrondo.

"En el acto del embargo el Márshal se abstuvo de embargar ciertos efectos un automóvil y un artefacto de panadería porque se le dijo por la tercerista allí presente, que pertenecían a otras personas y si bien allí y entonces ella manifestó ser dueña de los demás implementos, no opuso resistencia ni formuló protesta contra el embargo que verificó el Márshal y en el certificado de dicho diligenciamiento no consta circunstancia alguna relacionada con la actitud de la tercerista, que, como se ha dicho, estuvo presente en aquel acto.

"También debe mencionarse la existencia de la escritura de compraventa de bienes muebles número 6, otorgada ante el mismo notario Sr. Vizcarrondo el 27 de mayo de 1922, en la que fueron partes el demandado Ducret y William E. Kennedy, esposo de la tercerista. En esa escritura aparece adquiriendo Ducret de Kennedy y un señor Suárez, una colección de muebles y maquinarias que se describen en una y otra escritura exactamente de igual manera, con la particularidad de que en los dos instrumentos se men-

ciona, junto con los muebles, un número igual de cajas de ciruelas, melocotones, pasas, manzanas, carne, etc.

"Por otra parte, entre los bienes embargados por el Márshal, hay algunos que no figuran incluídos en la descripción de la cláusula 5ª de la escritura de 31 de marzo de 1924, como un carro 'Maxwell' dos chasis 'Maxwell', una alteza de madera, una romana de hierro de brazo, moldes para bizcochos, platillos de cartón, máquinas de confeccionar bizcochos, un armario de madera, etc.

"No ha sido contradicho el hecho de que después de practicado el embargo y estando el Sr. Suro, depositario de los bienes embargados, recluído en un sanatorio, entregó a Ducret, a su instancia, la llave del local donde estaban depositados para poder confeccionar dulces. En aquella ocasión él manifestó a Suro que nada debía a la señora Méndez por alquileres y que la venta de los muebles era simulada.

"Bajo tales circunstancias, y tomando en consideración las disposiciones del artículo 1264 del Código Civil que dice así:

" 'Se presumen celebrados en fraude de acreedores, todos aquellos contratos por virtud de los cuales el deudor enagenare bienes a título gratuíto. También se presumen fraudulentas las enagenaciones a título oneroso, hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instante, o expedido mandamiento de embargo de bienes.'

"La Corte es de opinión que la tercerista no ha justificado suficientemente su derecho y que debe declararse sin lugar su reclamación, imponiéndosele el pago de las costas."

[1] Un documento notarial en debida forma en esta jurisdicción no se presume que ha sido otorgado en fraude de acreedores a menos que y hasta que se demuestre o que envuelve un traspaso de propiedad sin consideración alguna para ello o si no una venta hecha después de dictada la sentencia contra el vendedor o con posterioridad al libramiento de un embargo contra su propiedad. La prueba en uno u otro caso debe ser razonablemente clara y satisfactoria y suficiente para sostener una conclusión de hecho terminante.

[2] Una mera sospecha por fuerte o bien fundada que sea, de que una o ambas de las condiciones previas para po-

der invocar el artículo 1264 del Código Civil, pueden existir no es suficiente.

[3] El dueño de la propiedad embargada como perteneciente a otra persona no tiene ninguna obligación o deber de oponerse al embargo o a hacer una protesta violenta contra la actuación del márshal. El silencio en el diligenciamiento en cuanto a la reclamación hecha positivamente por tal dueño en el momento del embargo sería más significativo tal vez si el hecho de hacerse tal reclamación entonces estuviera en disputa. Pero en el presente caso el funcionario que dirigió el embargo declaró en cuanto a la notificación hecha por Ana Méndez de su reclamación como dueña de la propiedad embargada y de su intención de sostener su derecho a la misma ante la corte. El hecho así establecido según parece no se pone en duda por el juez sentenciador.

La circunstancia de que el inventario contenido en el traspaso hecho por Kennedy y Suárez a Ducret se observó al pie de la letra dos años después en la venta de Ducret a Ana Méndez se explica por el hecho de que el documento posterior fué redactado por el empleado del notario teniendo a la vista el anterior documento.

Que varios artículos de valor apreciable no fueron incluídos en el inventario original y omitidos en el traspaso subsiguiente indica más bien el probable incidente respecto a una porfía entre el propuesto adquirente y un acreedor impertinente que un fraude deliberado concebido y perpetrado después del embargo e incautación de la propiedad.

Otras indicaciones de actuación apremiante al último minuto por todas las partes interesadas se verán de la cita de la declaración del notario, *infra*.

No estamos impresionados tampoco con las admisiones que dice Suro se hicieron a su presencia por Ducret. En primer lugar el mismo Suro fué contradicho expresamente por el sub-márshal lo mismo que por la tercerista acerca de lo que ocurrió al hacerse el embargo y por la conclusión

a que llegó el juez de distrito sobre este punto. En segundo lugar el objeto de la visita de Ducret en la fecha de la alegada admisión fué obtener de Suro como encargado de la propiedad embargada una llave del edificio en el cual estaba almacenada. Hasta dónde dependía el éxito de su misión de las admisiones en cuestión no es cosa clara, pero él obtuvo la llave. En tercer lugar el valor probativo de tales admisiones no se aumenta, por así decirlo, por la conducta peculiar de Ducret mismo en otras ocasiones, ya las manifestaciones hechas en tales ocasiones se consideren ciertas o falsas. En demostración de este punto tomamos de la declaración de un abogado, quien parece que no tiene relación directa alguna o interés en este caso, lo siguiente:

"P.—¿Ha tenido alguna vez relaciones con el señor Ducret:—R.—Solamente una pequeña conversación.—P.—¿Puede referir al señor Juez esa conversación?—R.—Habrá cosa de dos o tres meses, no puedo . . . . . (Dmdo.) Me opongo a esa conversación.—(Juez) —El Señor Ducret ha podido venir para demostrar esa conversación. ¿Qué va a demostrar con eso?—(Dte.) Que es una confabulación de Ducret y del otro demandado Sr. De Choudens, para hacer aparecer que esos bienes no son de la señora Méndez Vaz. Ducret le pasó los bienes a la señora Méndez Vaz por los cánones de arrendamiento, y el mismo día se hizo demandar por el señor De Choudens.—(Juez) —Puede declarar.—R.—Hace cosa de dos o tres meses, fué antes de las elecciones, tuve necesidad de cerciorarme de los bienes que ya había embargados.—P.—¿En qué caso?—R.—En el caso de Juan de Choudens vs. Ducret.—P.—¿Otro caso diferente a éste?—R.—Esa es la tercería que se interpone en este caso de Juan de Choudens vs. Ducret. Hay el pleito primitivo, el 540, en que me parece que Juan de Choudens demanda a Ducret, y según creo este abogado representaba al tercerista en el caso de Juan de Choudens vs. Ducret, esta parte representaba a la Candem Rubber Co. Embargó bienes muebles e inmuebles y tuve necesidad de cerciorarme de cuáles eran esos bienes inmuebles, porque los muebles los sabía.—(Dmdo.)—Eso es un caso completamente distinto. Este es el 540.—R.—Ahí hay embargado por la Candem Rubber Co. . . . . (Juez) —Aquí no hay nada embargado.—R.—Son dos casos. En una caja de hierro que era lo único que restaba de una lista muy larga que había hecho el señor De Choudens, demandando entonces a Ducret,

quedaban ciertos artículos en la caja de hierro, y esta parte embargó lo que quedaba sin embargar, y embargué dos carros, en ese procedimiento en el caso 540 hay un embargo, en que presté una fianza de 1,500 dollars, y se embargaron dos casas, que aparecían en el pleito de De Choudens. Entonces tuve necesidad de verme con Ducret y de ahí viene la conversación con él. Fuí a ver las dos casas que me indicó el ·márshal cuáles eran; no lo encontré, esperé y vino y tuve esta conversación: 'Mr. Ducret, yo represento a la Candem Rubber Co. He embargado dos casas, son estas las casas que he embargado.' ¡Ah! No, estas casas no son mías. De Choudens me ha embargado estas casas, en ese procedimiento 540, pero esas dos casas no son mías. Yo le dije a De Choudens que incluyera estas dos casas como le hubiera dicho que incluyera la Intendencia, estaba interesado en hacer aparecer gran cantidad de propiedades que no tenía, y me embargó esto y la maquinaria, que le aconsejo que la embargue Ud. también.' 'La fábrica', me dijo. Entonces me detalló esa fábrica, masas, automóviles, la mar de artículos. Entonces me hizo el relato de que él le vendió esos bienes a la tercerista Ana Méndez Vaz, que le vendió esos artículos a ella en pago de rentas, pero que habiéndose dado cuenta y queriendo salirse de la boca del lobo se había metido en manos de De Choudens. 'Si quiere cobrar esos tres mil pesos embargue toda esa fábrica, que eso vale dinero.' Entonces le dije: 'esto está embargado.' 'Pues vamos a hacer lo siguiente: el señor De Choudens todos los días recibe partidas de embarque y esos embarques me los da para yo venderlos, y yo los vendo por cualquier cosa. . . . . (Dmdo.) ¿Qué tiene que ver todo esto?—R.—Entonces yo vendo esos artículos por cualquier cosa, y de ahí yo tiro. Si quiere, hay un embarque, cuando me lo entregue el señor De Choudens, Ud. se me tira encima y me lo embarga.' Me dijo así, y no lo he vuelto a ver; las dos casitas no pertenecen a Ducret, sino a una familia. (Dmdo.) Solicito de la Corte la eliminación de la declaración del testigo por ser inmaterial y ser de referencia.—R.—Lo que pasó que le había vendido los bienes y le había pesado y creyendo salir de boca del lobo vino donde el señor De Choudens. 'Le dije a De Choudens que me demandara; entonces le dije a De Choudens que incluyera ahí las dos casas y los bienes estos para deslumbrar' frases de Ducret. Me convencí de que esas dos casas no eran de Ducret. Pregunté a los vecinos y no eran de él. Tuve trabado un embargo sobre dos casas que no existían. No lo he vuelto a ver más.—(Dmdo.) P.—¿Eso se lo dijo el señor Ducret hace dos o tres meses?—R.—Como un mes antes de las elecciones; no puedo precisar la fecha; fuí por dos o tres oca-

siones y no lo encontraba.—(Juez)   P.—¿ Qué le dijo respecto a los bienes muebles?—R.—Me dijo que los había vendido a la tercerista Ana Méndez, por rentas, pero que habiéndose convencido que había caído en la boca del lobo, se había ido donde De Choudens, que me dijo era pariente.   Entonces le dije 'ahora es peor.'—P.—No tiene congruencias, porque la demanda de De Choudens es anterior a la venta.—R.—Hablo solamente lo que me dijo Ducret.—No tenía más interés que convencerme de si eran de él las dos casas; al decirme que no, que eran de otro, me retiré.—P.—¿ Ud. perseguía a Ducret, para demandarle o embargarle bienes?—R.—No señor, yo demandé al señor De Choudens y embargué esos bienes; fuí a ver las casas nada más.—P.—¿ Cuáles?—R.—Las dos casas que aparecían embargadas por mí, por la Candem Rubber Co., que aparecían embargadas por Juan De Choudens, y como teníamos un crédito contra Juan De Choudens, embargamos.   Nada absolutamente contra Ducret; no lo conozco ni tenía reclamación contra él.   Solamente embargar los bienes que pudieran tener De Choudens en el pleito seguido por De Choudens vs. Ducret, y me parece que no son de nadie las casas.''

[4] El notario que redactó los dos documentos mencionados por el juez sentenciador fué llamado a declarar por la tercerista y manifestó lo siguiente:

''P.—¿ Su nombre?—R.—Luis Vizcarrondo.—-¿ Profesión?—R.-- Abogado y notario.—P.—¿ Conoce a la señora Ana Méndez Vaz?— R.—Mucho.—P.—¿ Conoce al señor Antonio Ducret?—R.—Sí señor, mucho.—P.—¿ Ha tenido oportunidad de intervenir en alguna escritura que hayan hecho esos señores?—R.—En diferentes negocios y asuntos de ellos, por más de cuatro años fuí abogado y notario del señor Ducret, del señor De Choudens, de la señora Méndez Vaz y su esposo.   Estaban relacionados en negocios.—P.—¿ Qué es esto que le presento?—R.—Una escritura de la señora Méndez Vaz y de Ducret.—P.—El párrafo primero dice que los efectos de la misma se retrotraen al primero de marzo de 1924.   Tiene fecha la misma de 30 de marzo del mismo año, ¿ por qué se hizo esa retrotracción?—R. —Quiero que me permita cinco minutos, porque aquí está mi reputación de notario en entredicho, y yo, como hombre y caballero que soy, perteneciente a una distinguida familia, no puedo permitir que mi nombre ande en boca de Tribunales.   Me voy a retrotraer a una escritura que hice con anterioridad a ésta, de dos años, en la cual el señor Ducret, que era socio del señor De Choudens, compró a una sociedad, no recuerdo bien (si hubiera estado preparado hubiera traído copia de mi protocolo) compró al señor Kennedy, esposo de

la señora Méndez Vaz, y a otros señores más, dos más que formaban la sociedad, que estaba instalada en la parada 19 para adentro, una fábrica de dulces y pan y galletas, etc.—P.—¿En qué consistía esa fábrica?—R.—Una panadería.—P.—¿El edificio?—R.—No señor, compró a esos señores todas las maquinarias y ciertas provisiones que había allí, el señor Ducret. Yo hice inventario dentro del local, de lo que había y se hizo la escritura. Dos años con anterioridad, lo menos a ésta. A raíz de eso, a los tres o cuatro meses de eso, el señor Kennedy fué demandado en cobro de dinero por Luciano Ramos y le embargaba toda esta propiedad, creo que había dos automóviles, una maquinilla (el inventario está en la escritura anterior.) Yo representaba al señor Ducret en la Corte Municipal de Río Piedras, en la tercería de bienes muebles, la que resolvió a favor nuestro la Corte. Inmediatamente a eso el señor Ducret adeudaba no sé por qué concepto, y después adeudó más por concepto de haberle la señora Méndez Vaz alquilado un local y darle unas cuantas cosas, cierta cantidad, y como siete u ocho meses . . . . P.—(Dmdo.) —¿Eso se lo dijo a Ud. el señor Ducret?—R.—Eso lo sé porque era abogado de ellos. Las confesiones no debo hacerlas, por la misma cuestión de ser su abogado.—(Juez)—P.—¿Su conocimiento, siendo abogado de ellos, era por lo que le dijo él?—R.—Todos ellos, todas las cosas que me dijeron. Sabe que el cliente tiene que ponerse al habla con un abogado para poder él arreglar cualquier cosa en la corte. Seis o siete meses antes de esta escritura, por diferentes ocasiones, pero en distintas ocasiones, se personaron a mi bufete el señor Ducret, algunas veces la señora Méndez Váz, para que se hiciera el traspaso de esa propiedad que había adquirido, cediéndola el señor Ducret a favor de la señora Méndez Vaz por cierta deuda que había, no puedo explicarla, pero eso consta de mi protocolo. El señor De Choudens también en distintas ocasiones se acercó a mi bufete para que exigiera de Ducret que acabara de vender a la señora Méndez Vaz, y recoger una cantidad que tenía que coger, y lo partiera con De Choudens que era socio, no dentro de la escritura esa sino en otra escritura, para instalar en el Teatro Municipal una cantina y un negocio de provisiones. Refiriéndome a esta escritura, 15 ó 20 días antes, no ocho días como dice la señora Vaz (voy a advertir a la Corte que esta es una señora enferma, una neurasténica y no puede recordar ciertas cuestiones) quince ó 20 días antes, en esa época tenía la sociedad profesional el señor Rincón Plumey y yo, como abogado y teníamos al señor Quintana Reyes dentro de la Sociedad también, como protocolista y agente judicial, tenía también participación; 15 ó 20 días de antelación a firmarse esta es-

critura, llegó el señor Ducret con la señora Méndez Vaz a hacer la
escritura.   Tenía en ese tiempo bastante trabajo y ordenó al señor
Quintana para que la hiciera.   Tomó las notas y dijo que la haría.
Por el trabajo se fué pasando tiempo y tiempo hasta que llegó un
día (en esos 15 días anteriores me llamó ella que quería arreglar
eso porque quería vender o hacer un buen arreglo con esa panade-
ría y así se lo dije por dos o tres ocasiones al señor Quintana) en
ocasión que llegó este día en que llegaron a firmarla, llegaron allí y
entonces se hizo la escritura y se firmó delante de ellos, el día que
dice la escritura, creo que es el día 31 de marzo de 1924; delante
de mí y de los testigos se hizo esta escritura firmando todos.   Debo
advertir que desconocía por completo que hubiera tal embargo y tal
demanda, etc. porque vuelvo a repetir, que por más de 4 años he
sido abogado de todos ellos; y me ha extrañado mucho después de
solicitar esta copia que ella no me diera conocimiento de la demanda
ni de ese embargo.   A los dos o tres días vino donde mí. . . .   Debo
omitir ciertas cuestiones que sucedieron en el bufete entre los so-
cios, y yo mismo recomendé al señor Ducret que llevara a la señora
Méndez Vaz al bufete de Sancho Bonet.—P.—Nada más.—(Dmdo.)
Nada.''

El artículo 21 de la Ley de Evidencia prescribe expresa-
mente que:

''Se presume que un testigo dice la verdad.   Esta presunción,
sin embargo, puede ser rechazada, por la forma en que declare, por
el carácter de su declaración o por evidencia que afecte su veraci-
dad, honradez, integridad, o móviles, o por evidencia contradictoria.''

Un abogado y notario de buena reputación no es excep-
ción a esta regla general.   En la declaración del Sr. Vizca-
rrondo no encontramos ninguna de las características co-
rrientes de falsedad.   Es la figura más sobresaliente si no
el único aspecto digno de confianza en el presente caso.
Parece haberse dado bajo la inferencia de fuerte pensa-
miento y sin previa preparación.   Demuestra una disposi-
ción digna de elogio en guardar las comunicaciones privile-
giadas de los varios clientes interesados.   Proporcionaba
una oportunidad amplia para un interrogatorio de repre-
guntas completo pero las partes más interesadas no hicie-

ron ningún esfuerzo por aprovechar esta oportunidad. Permanece sin atacar y sin contradecir en los autos.

La declaración de la tercerista misma no inspira confianza. Puede ser que ella tuviera buena razón para estar nerviosa y aprensiva. Puede ser que el traspaso original de la propiedad hecha por Kennedy y Suárez a Ducret fuera la verdadera excusa. Puede ser y probablemente es cierto que no hubo contrato muy definitivo de arrendamiento y que las rentas vencidas por virtud del mismo no eran la única y principal consideración para el traspaso por Ducret. La manifestación hecha por Vizcarrondo por inferencia, si no directamente, admite esto. Pero de ello no se infiere necesariamente que el traspaso fuera simulado o enteramente sin consideración.

Es un hecho no negado en el caso que el edificio donde la maquinaria en litigio estaba instalada, en el cual se había mantenido el negocio de una panadería por varios años, era propiedad privativa de Ana Méndez Vaz. No se pretende que con anterioridad al traspaso de la maquinaria a ella hubiera sido recibido en alguna ocasión algo en compensación por el uso y ocupación de ese edificio.

[5] La orden de embargo y su diligenciamiento por el márshal no fueron presentados como evidencia. Si el mandamiento había sido dejado en poder del márshal antes de las doce o temprano por la tarde el día 31 de marzo, entonces es lógico asumir que esta circunstancia importante se hubiera hecho constar en algún momento durante el juicio. El hecho inexplicado de que el embargo no se practicó hasta el día siguiente indica una conclusión contraria. Pero aún de otro modo el hecho de que el documento notarial fué otorgado y el mandamiento de ejecución librado el mismo día no levanta ninguna presunción de prioridad en favor del mandamiento. Y como ya hemos indicado, los autos en conjunto no revelaban base satisfactoria para la inferencia de que el documento notarial en cuestión en realidad fué otorgado como pensamiento posterior en cierta fecha du-

rante la primera semana de abril y poniéndole una fecha anterior deliberadamente.

De sostenerse la teoría de la corte inferior los documentos públicos en la isla quedarían al mismo nivel que los privados y los convenios verbales, lo cual sería un trastorno en el espíritu y letra de la ley, tanto substantiva como adjetiva.

*La sentencia apelada debe ser revocada.*